# Supreme Court of the Navajo Nation

### In the Matter of the Estate of Joe Thomas.
### Decided August 12, 1988

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Wesley W. Atakai, Esq., Navajo Legal Aid and Defender Service, Window Rock, Arizona, for the Appellant Dorothy James; Samuel Pete, Esq., Window Rock, Arizona, for the Appellees, Ray Thomas and Art Lee Thomas.

Opinion delivered by BLUEHOUSE, Associate Justice.

Joe Thomas, a Navajo who resided within the territorial jurisdiction of the Navajo courts, was survived by eight adult children, including the appellant, Dorothy James, and the appellees, Ray Thomas and Art Lee Thomas. Dorothy James appeals the district court's award of a livestock grazing permit, containing 193 sheep units, to the appellees on a joint undivided basis. Appellees were awarded the permit after the court found that an oral will devising the permit to the appellees was valid because it met the requirement that the immediate family be present and agree. The alleged oral will was made in the presence only of the appellees, who resided with their father. None of the other children resided at the homesite of their father. The court determined that the appellees constituted the immediate family to the exclusion of all other children. The issue before this Court is whether the immediate family rule excludes the children who do not reside with the testator and therefore validates oral wills made in the presence of only those children who reside with the testator. We clarify the immediate family rule and hold that all children of the testator, including the spouse if alive, must be present in order for an oral will to be valid. We therefore reverse the judgment of the district court and remand for findings on intestate succession of the permit.

## I

Probate proceedings in this case began in April 1984 with the appointment of heir Mary T. Silversmith as administratrix of the estate. In July 1984, the administratrix filed a "Final Accounting and Proposed Distribution" of all property of the decedent. It proposed awarding 27 sheep units of the grazing permit to Dorothy James and 166 sheep units to Art Lee Thomas and Ray Thomas. At the

request of the administratrix in December 1984, a hearing was scheduled on dividing the grazing permit due to disagreement among the heirs. No other portion of the proposed distribution was contested. The appellees filed a claim in April 1985 for the grazing permit "in accordance with the wishes of the decedent." In November 1985, heirs Mary Cowboy, Dorothy James, and Mary T. Silversmith filed claims for divided portions of the grazing permit. A hearing took place in February 1986. Briefs were requested from the administratrix and the appellees, and the district court's order was subsequently filed in December 1986.

The district court found that Ray Thomas and Art Lee Thomas lived in the same camp or household as the decedent prior to his death; that they provided constant care to their father by providing firewood, water, livestock feed, and food; and that all other heirs resided elsewhere.[1] Documents in the record show that the other children lived nearby in the same community and in Gallup and Tohatchi. Dorothy James, in whose home the decedent received final care and died, was a long-time resident of Tohatchi. The "Final Accounting and Proposed Distribution" provides the best evidence of the appellees' co-residence with their father at the homesite.

## II

The question of who constitutes the decedent's immediate family has been the subject of previous opinions by Navajo courts. *See, e.g., In the Matter of the Estate of Boyd Apache*, 4 Nav. R. 178 (Window Rock Dist. Ct. 1983); *In the Matter of the Estate of Chisney Benally*, 1 Nav. R. 219 (1978); and *In the Matter of the Estate of Ray Lee*, 1 Nav. R. 27 (1971). In each of these cases, the courts applied Navajo custom, as provided by 8 N.T.C. § 2(b) (1978), to determine the appropriate immediate family. Enacted in 1959 and never amended, Section 2(b) provides that the court shall apply the Navajo custom as to inheritance, if such custom is proven, in order to determine the heirs.

The Navajo custom of intestate distribution is outlined in *Estate of Apache*, 4 Nav. R. at 182-83. Productive goods remained with the camp and the supervised distribution of nonproductive goods was made during a gathering of decedent's children, other immediate family members, and other relatives not living in the camp. *Id.* Distribution of nonproductive goods was based on immediacy to decedent and need. *Id.* The children were always provided for. *Id.* The immediate family included both the children and other relations who co-resided with the decedent:

---

1. We note that the court enumerates seven heirs at one point and six at another. The court also finds that decedent orally devised his grazing permit to Ray Thomas and Art Lee Thomas, that this was done in the presence of Ray Thomas, and that other heirs were not present when decedent orally devised the permit. See Finding of Fact no. 8. If such were the case, there could be no valid oral will under any interpretation of the immediate family rule, but no one argues that Art Lee Thomas was not also present.

> It must also be understood that the Navajo clan system is very important, with a child being of the mother's clan and "born for" the father's clan. The clan is important, and the family as an economic unit is vital. The Navajo live together in family groups which can include parents, children, grandparents, brothers and sisters . . . . Some call these family and clan members living together a "residence group," and some call them a "camp."

*Id.*, citing Shepardson and Hammond, "Navajo Inheritance Patterns: Random or Regular?" 5 *Ethnology* 87, 90 (Jan. 1966) and Barsh, *Navajo Property Law and Probate, 1940 - 1972* (unpublished manuscript).

This was the customary distribution of a decedent's property and is still practiced today. We can find no record of testamentary succession, either written or oral, in Navajo custom before the introduction during the middle of this century of the Anglo-American legal concept of succession through designation in a will. See, e.g., 3 N.T.C. § 785(1) (a 1946 statute providing for the designation of a successor to a grazing permit through a will). In 1971, however, *Estate of Lee* recognized "a well-established custom that a Navajo may orally state who shall have his property after his death when all of his immediate family are present and agree." 1 Nav. R. at 31.

Following *Estate of Lee*, the Navajo courts recognized the validity of an oral will when it is made by the testator in the presence of all of his or her immediate family and all members of the immediate family agree that the testator orally made known his or her last will before them. We hold today that the immediate family includes all of the children of the testator and the spouse if alive.

A rule which requires all the children of Joe Thomas to be present in order to validate an oral will and not merely the two who co-resided with him is supported by custom and case law. As discussed above in *Estate of Apache*, custom always included the children of the deceased in intestate succession, and the court included the decedent's child in the immediate family even though the child lived apart from the deceased. 4 Nav. R. at 183. The Court in *Estate of Lee* held that the immediate family must include the wife and children; their resident status was not at issue. 1 Nav. R. at 32. The Court in *Estate of Benally* included all the children of the decedent's current marriage as his immediate family; their resident status was also not at issue. 1 Nav. R. at 222. The resident status of the children of the decedent's former marriage, however, was at issue in *Estate of Benally*, and the Court did not consider them as members of decedent's immediate family. *Id.* We overrule that part of the decision in *Estate of Benally* which excluded the children from a previous marriage who did not reside with the testator from being considered members of the immediate family in order to adopt a strict rule that all children of the deceased constitute the immediate family.

In its opinion in *Estate of Benally*, the Court appeared to adopt as obiter dictum language from other state jurisdictions that defined immediate family in terms strictly of living together in the same household. Under Anglo-American law, this would require all heirs to live under the same roof. The effect of the

same household rule adopted in *Estate of Benally* is to essentially eliminate from the immediate family those children of the testator who do not reside under the same roof as the testator. Such a rule is inconsistent with the Navajo custom which teaches that parents should view each of their children equally. The opinion did not consider Navajo custom in designating immediate family heirs as required by statute.

The Court in *Estate of Benally* adopted this rule in order to limit the hardship of requiring the presence of the Navajo extended family to validate oral wills. 1 Nav. R. at 223. It recognized the need in the Navajo Nation of an alternative to a written will. *Id.* The need for an oral will must be balanced, however, with the protection of all of the decedent's heirs. The children of the decedent are not merely members of his or her extended family but constitute his or her immediate family.

In the present case, the immediate family of Joe Thomas includes all of his eight children, whether or not they resided with him at his homesite.[2] Because not all of those children were present at the time the alleged oral will was made, there is no valid oral will. We therefore reverse and remand for further determinations consistent with Navajo laws of intestate succession of grazing permits.

---

2. In this case, this would include Mary A. Silversmith, who is listed by the administratrix as an heir but was not included as an heir in the district court's findings, apparently because she was born by a different mother and did not reside with the decedent.